## HAMILTON v. HANNUS. (No. 7387.)

(Court of Civil Appeals of Texas. Ft. Worth. April 20, 1912. On Rehearing, April 8, 1916.)

1. APPEAL AND ERROR ⟜512 — RECORD — SHOWING JURISDICTION — INTERMEDIATE COURTS.

The transcript on appeal from the county court in a case originating in justice's court should contain a transcript from the justice's court showing the rendition of judgment and the giving of appeal bond there, necessary for jurisdiction of the county court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2326; Dec. Dig. ⟜512.]

### On Rehearing.

2. APPEAL AND ERROR ⟜635(2)— RECORD — AMENDMENT.

The judgment on appeal from the county court in a case originating in justice's court should not be reversed for failure of the record to show rendition of judgment and giving of appeal bond in the justice court, necessary for jurisdiction of the county court, without op-

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

portunity being first afforded for correcting the record, if possible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2776, 2829; Dec. Dig. 635(2).]

3. EVIDENCE 444(6) — PAROL EVIDENCE — CONDITION OF PAYMENT—NOTES.

As between the parties to a note, the oral condition on which it was delivered, that it should be payable only on the happening of a certain event, is valid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1943, 2049; Dec. Dig. 444(6).]

4. EVIDENCE 213(1) — OFFER OF COMPROMISE.

Offer of the maker of a note to the payee, long after its maturity and refusal of payment, and after it had been given to an attorney to collect by suit, to allow it on a piano if said maker would buy a certain piano from said payee, being clearly one of compromise, containing no admission of liability or of any fact from which liability could be inferred, cannot be shown in an action on the note, in which the defense was delivery of the note on an oral condition of payment, which had not been satisfied.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745, 748–750; Dec. Dig. 213(1).]

5. TRIAL 251(7) — INSTRUCTIONS — UNDISPUTED FACTS.

Where plaintiff in an action on a note, in which the defense was that it was delivered on the oral condition that it should not be paid unless a $400 note given by B. to defendant on the purchase of land was paid, merely denied that there was any such condition, and did not raise the issue of collusion or good faith, it was error to submit the issue of whether the note of B. was paid, it appearing that B. refused to pay it, and otherwise refused to comply with his contract of purchase, on the ground of misrepresentations by plaintiff, the broker, and that defendant, to protect the property, had to take up a note, constituting a lien on the land, which B. had assumed, and that consequently defendant canceled the contract of sale, and surrendered to B. his $400 note.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 592; Dec. Dig. 251(7).]

Appeal from Baylor County Court; Nat G. Mitchell, Judge.

Action by J. J. Hannus against J. W. Hamilton. From a judgment for plaintiff on appeal from a justice, defendant appeals. Reversed and remanded.

D. A. Holman, of Seymour, and S. J. Hunter, of Ft. Worth, for appellant. Glasgow & Kenan, of Seymour, for appellee.

CONNER, C. J. This is an appeal from a judgment of the county court in appellee's favor for the sum of $184, the amount found to be due upon a promissory note in the sum of $126.

[1] The transcript before us discloses a transcript from the justice's court showing that the suit upon the note mentioned had originated therein, and reciting that the plaintiff, J. J. Hannus, had recovered a judgment against the defendant, J. W. Hamilton, on July 27, 1909, but the justice's transcript does not contain the judgment so recited, and wholly fails to show that any appeal bond,

as required by law, had been given or approved by the justice of the peace.

Under such circumstances the judgment must be reversed, and the cause remanded to the county court, with instructions to dismiss the appeal unless the jurisdictional facts are made to appear in accordance with the principles heretofore decided by us in the cases of American Soda Fountain Co. v. Mason, 55 Tex. Civ. App. 532, 119 S. W. 714, and Ware v. Clark, 58 Tex. Civ. App. 356, 125 S. W. 618. See, also, case No. 7400, Patrick v. Pierce, 187 S. W. ——, this day decided by us.

Reversed and remanded, with instructions.

On Rehearing.

This suit was instituted in a justice court by the appellee upon a nonnegotiable note for $126, with interest and attorney's fees. The result of the trial in that court was in the plaintiff's favor, and the defendant appealed to the county court, where the plaintiff again recovered judgment. On appeal to this court, to wit, on April 20, 1912, the judgment was reversed, for the reason that the transcript failed to contain a judgment of the justice court, or copy of the bond given on appeal to the county court.

[2] Later the appellee presented his motion to set our judgment aside, and proffered a corrected transcript from the justice court containing the omissions noted. We were inclined to the view on the authority of amended rule 22 (142 S. W. xii) as promulgated by the Supreme Court in the case of H. & T. C. R. Co. v. Parker, 104 Tex. 162, 135 S. W. 369, that the record could not be so corrected after submission; but, in view of other rules and authorities, we certified the question for determination to our Supreme Court in the case of Patrick v. Pierce, No. 7400, 187 S. W. ——, and we have since retained the case now before us awaiting the decision sought by the certificate. On a recent day of the present term, to wit, on March 27th, we received the decision of our Supreme Court on the certified question in the case of Patrick v. Pierce, 183 S. W. 441, and that court holds, in substance, as will be seen by a consideration of their opinion, that the rules relating to the question are in conflict, and that in cases such as here the judgment should not be reversed without affording the parties an opportunity to correct the record, if they can.

We accordingly grant appellee's motion to set our former judgment aside, and to file the corrected record proffered, and will proceed to consider the appeal upon its merits.

As pleaded, and as there was evidence tending to show, the substance of defendant's defense to the note is that it is without consideration, in that it was executed and delivered upon an agreement that it was not to be paid until the payment of a certain unpaid note for $400 executed by one Balucek to defendant in a purchase of land. As more par-

ticularly detailed in defendant's pleading and evidence, defendant owned a certain tract of land situated in Baylor county which he desired to sell, and he listed the same for sale with plaintiff, who was a land agent, upon an agreement that, if he (plaintiff) sold the land for $9 per acre, with a cash payment for $1,100, then he (defendant) would pay the usual commissions of 5 per cent. upon the sale, and that, if he (plaintiff) could effect a sale at a greater sum per acre than $9, securing the $1,100 cash payment, the defendant would give him, in addition to the 5 per cent. commissions, one-half of the excess price plus $50. It was alleged, and defendant and his wife both so testified, that plaintiff negotiated a sale of the land with said Balucek for $9.50 per acre, but the proposed purchaser found himself unable to pay the full sum of $1,100 in cash, whereupon plaintiff, as defendant alleged and testified, urged that defendant accept the $700 in cash and take Balucek's note for $400, payable the following December; plaintiff assuring defendant at the time that Balucek was a relative of some means, and that he thought the $400 note would be promptly paid. Finally, defendant accepted this conclusion of the matter, and conveyed the land to Balucek, receiving at the time $700 in cash and Balucek's $400 note, payable the following December; Balucek also assuming a number of outstanding vendor's lien notes that had been executed by defendant. Defendant alleged and testified, however, that before this was done it was distinctly agreed that the extra compensation above noted should not be paid to plaintiff until, and only in event, Balucek paid the $400 note. Defendant further alleged that some time after this the plaintiff came to him and insisted upon the execution of the note sued on in this case to cover said extra commissions, stating that it would be necessary in the event of the death of either party, at the time, however, conceding that it was not to be paid until the payment of the Balucek $400 note. Defendant thereupon, as he alleges and testifies, executed the note sued upon, and in furtherance of their agreement that it was not to be paid until the payment of the $400 note made the note payable upon the same date as was the Balucek note, and also indorsed thereon the following words: "This note is not to be transferred or used as collateral." It further appeared without dispute that upon the receipt of the $700 paid by Balucek as his first cash payment defendant paid to plaintiff the full 5 per cent. commissions upon the sale. Plaintiff, however, both in his pleadings and evidence denied the agreement for the conditional payment of the note sued upon as alleged and supported by defendant's testimony.

[3, 4] On cross-examination the defendant was required to testify over his objection that he proposed to the plaintiff "that, if he would buy a certain piano from defendant, he would allow that note [the one in contro-

versy] in the settlement for the piano." The objection was that the proposition was made purely as one of compromise, as the defendant testified, although it was not so stated to the plaintiff at the time the proposition was made. It further appears that the proposition was made after a demand had been made upon the defendant for payment of the note and after the note had been delivered to the plaintiff's attorney for legal action thereon, and, in view of the sharp conflict in the testimony on the defensive issue presented by defendant, we think the objection should have been sustained. That, as between the original parties to the note, the agreement pleaded by the defendant, if established by the evidence, would constitute a perfect answer to the suit, seems well established in the authorities. See Holt v. Gordon, 176 S. W. 902; Id. (Sup.) 174 S. W. 1097; 3 R. C. L. p. 869, par. 53. And it seems evident that the testimony objected to had a tendency to disprove the existence of the condition upon which the note in controversy was to be paid as pleaded by the defendant. It also had the further tendency to cause the jury to believe that the defendant thus admitted his liability upon the note sued upon, regardless of the conditional contract for its payment, as urged by the defendant, and this becomes material in view of further evidence to the effect that Balucek refused to pay the $400 note upon the date of its maturity, and refused to pay other notes assumed by him upon his purchase of the land, and that thereupon the defendant, as he testified, was compelled to cancel the purchase and surrender to Balucek the $400 note; thus, as plaintiff contends, effecting a payment of that note, even though the conditional agreement set up by the defendant was true. So that, if the testimony was inadmissible, as we think, it cannot be doubted that it was prejudicial. Plaintiff defends the ruling on the ground, substantially, that the proposition amounted to a simple admission of liability, and that, as such, it was admissible. The trial court, in explanation of the bill of exception, however, seems to predicate his ruling upon the fact that at the time of the proposition the defendant did not state that it was made without prejudice. We think neither suggestion can be adopted.

Overtures for the compromise of controversies are frequently made by parties who, in good faith, believe in the justice of their claim or defense, or who desire to avoid the annoyance and uncertainty of litigation. Hence, offers of compromise are not necessarily admissions that the claim or defense is lacking in merit, and such offers are not in general admissible. Mr. Jones in his work on Evidence, vol. 2, § 291, says:

"The rule is very clear that, when such offers are expressly stated to be without prejudice, they are inadmissible. If the contrary rule prevailed, no attempt to amicably settle litigation could safely be made; and the courts are inclined to encourage, rather than discourage, such

adjustments. Accordingly offers by a party with a view to compromise, to pay or accept a sum of money, or to make deductions, or to submit to arbitration, or to surrender certain property, or to purchase the property in dispute, and in general any efforts to secure a settlement, are inadmissible. While there are cases that an offer of compromise is admissible, unless it is stated to be without prejudice, yet the prevailing rule in England and in this country is that the offer will be presumed to have been made without prejudice, if it was plainly an offer of compromise. The courts look at the intrinsic character of the transaction; and, if the offer is clearly one of compromise, it is inferred to have been made without prejudice. In such case no caution that the offer is confidential or without prejudice need be expressed."

See, also, I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515. In that suit Ragsdale sought to recover of the railway company damages for the destruction by fire of grass and timber caused, as claimed, by sparks negligently emitted from a locomotive of the railway company. It seems that one Gooch, purporting to act on behalf of the company, undertook to adjust the claim, and the testimony admitted in the case was that Ragsdale demanded of Gooch $250 as payment of his damages, and that Gooch "offered to pay this as soon as he could hear from the auditor at St. Louis, and that appellee agreed to accept it." Our Supreme Court held that this testimony was inadmissible. In disposing of it they say:

"The principle is elementary that an offer to compromise a prospective suit, if expressly or impliedly made, without prejudice, cannot be admitted in evidence when objected to. To permit the introduction of such offers tends to discourage the adjustment of suits, and for that reason is against the policy of the law. If the object of the party in making the offer was to buy his peace (which is impliedly manifested by a mere proposition to pay a sum in settlement), it is deemed to have been made without prejudice, and will be excluded. 2 Whart. Ev. 257; 1 Greenl. Ev. § 192; Home Insurance Co. v. Baltimore Warehouse Company. 93 U. S. 527 [23 L. Ed. 868]. See, also, 2 Whart. Ev. 252. Numerous authorities may be cited to show that the admission of a fact pending a negotiation for compromise may be admitted; but we have found none that a proposition which has not been accepted and become a contract is legal testimony. In Home Insurance Company v. Baltimore. Warehouse Company, supra, the court say: 'The letter was an offer of compromise, and, as such, upon well-recognized legal principles, it was inadmissible. It contains no statement which can be separated from the offer and convey the idea which was in the writer's mind.' This shows the distinction between a fact admitted pending an attempt to compromise and a mere proposition of settlement. The testimony introduced in the case before us was purely an offer by Gooch to pay $200 in settlement of appellee's claim, subject to the approval of the auditor of the company, and, though accepted by appellee, could not, under the rules laid down above, be admitted in evidence over appellant's objection."

It seems plain to us that the defendant's offer was in its very nature one of compromise. It was made some year or more after the maturity of the note sued upon, and after he had refused to pay it, and after the plaintiff had delivered the note to his attorneys for collection by suit. The proposition did not contain an admission of his liability, or of any independent fact from which liability could be inferred. It was a simple proposition to settle the note if the plaintiff would buy the piano, the price not being stated, and the proposition not being accepted. Under all of the circumstances, therefore, we think the court erred in the ruling, and that appellant's first and second assignments of error presenting the question discussed must be sustained.

[5] In view of another trial we should perhaps also briefly notice several other questions presented by the assignments of error. The objection to the testimony of R. C. Jones to the effect that the defendant on an occasion mentioned stated that it was his "intention to charge in his proposed compromise of the debt sued on a price of the piano over what it was worth to pay the debt" need not be discussed, inasmuch as the exclusion of the compromise proposed will render the testimony last mentioned irrelevant and immaterial, as will doubtless be so ruled by the court below. So, too, under the present state of the pleadings do we think it immaterial that the defendant failed to consult the plaintiff about his rescission of the Balucek sale. It seems undisputed that the defendant, in order to protect the property, was compelled to pay one of the notes that Balucek in his purchase assumed to pay. It is further undisputed that Balucek refused to pay the $400 note, and otherwise refused to comply with his contract of purchase, on the ground "that matters were misrepresented to him" by the plaintiff in this suit. The resultant cancellation by defendant of the contract for the sale of the land wherein he delivered to Balucek the $400 note has not been attacked on the ground that it was collusive, or that the compromise then made between Balucek and the defendant was not made in good faith, or that this arrangement in any sense amounted to a purchase of the land on defendant's part, wherein, as part of the consideration, Balucek paid his $400 note. For the reasons just stated, we think it was error for the court to submit the issue of whether the $400 note of Balucek was paid. Under the circumstances this was not an issue. The fact was undisputed, and it is uniformly held to be erroneous to submit as doubtful an issue about which there can be no controversy.

Other assignments need not be noticed, but for the errors indicated it is ordered that the judgment be reversed, and the cause remanded.